UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JANE DOE NO. 1, a minor child, by her parent and next friend MARY ROE, JANE DOE NO. 2, and JANE DOE NO. 3, a minor child, by her parents and next friends, SAM LOE and SARA LOE,<br><br>Plaintiffs,<br><br>v.<br><br>BACKPAGE.COM, LLC, CAMARILLO HOLDINGS, LLC (f/k/a VILLAGE VOICE MEDIA HOLDINGS, LLC) and NEW TIMES MEDIA HOLDINGS, LLC,<br><br>Defendants. | Civil Action No. 14-13870-RGS |

## DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)

BACKPAGE.COM, LLC, et al.

By Their Attorneys,

Robert A. Bertsche (BBO #554333)
Jeffrey J. Pyle (BBO #647438)
PRINCE LOBEL TYE LLP
100 Cambridge Street, Suite 2200
Boston, MA 02114
(617) 456-8000 (tel.); (617) 456-8100 (fax)
rbertsche@PrinceLobel.com
jpyle@PrinceLobel.com

James C. Grant (admitted *Pro Hac Vice*)
Ambika K. Doran (admitted *Pro Hac Vice*)
DAVIS WRIGHT TREMAINE LLP
1201 Third Avenue, Suite 2200
Seattle, WA 98101
(206) 622-3150 (tel.); (206) 757-7700 (fax)
jimgrant@dwt.com
ambikadoran@dwt.com

**TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................................ 1

II.   ARGUMENT....................................................................................................................... 1

      A.    Plaintiffs' Claims Can Only Be Based on the Ads About Them and Thus Seek to Treat Backpage.com as the "Publisher or Speaker" of User Content. ............................................................................................................ 1

      B.    The Limited Exceptions for Section 230 Immunity Do Not Apply......................... 4

      C.    Plaintiffs' "Business Practices Claims" Are Deficient. .......................................... 5

      D.    Plaintiffs' Supposed Intellectual Property Claims Are Deficient. .......................... 9

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Backpage.com, LLC v. Cooper*,
 939 F. Supp. 2d 805 (M.D. Tenn. 2013) ................................................................. 8, 9

*Backpage.com, LLC v. Hoffman*,
 2013 WL 4502097 (D.N.J. Aug. 20, 2013) ................................................................. 8

*Backpage.com, LLC v. McKenna*,
 881 F. Supp. 2d 1262 (W.D. Wash. 2012) .............................................................. 8, 9

*Beckman v. Match.com*,
 2013 WL 2355512 (D. Nev. May 29, 2013) ............................................................... 3

*Dart v. Craigslist, Inc.*,
 665 F. Supp. 2d 961 (N.D. Ill. 2009) .......................................................................... 7

*David v. Signal Int'l, LLC*,
 2012 WL 10759668 (E.D. La. Jan. 4, 2012) ............................................................... 4

*Doe No. 14 v. Internet Brands, Inc.*,
 767 F.3d 894 (9th Cir. 2014) ...................................................................................... 3

*Doe v. GTE Corp.*,
 347 F.3d 655 (7th Cir. 2003) ...................................................................................... 7

*Doe v. Liberatore*,
 478 F. Supp. 2d 742 (M.D. Pa. 2007) ..................................................................... 5, 6

*Doe v. MySpace, Inc.*,
 528 F.3d 413 (5th Cir. 2008) ................................................................................... 2, 3

*Doe v. SexSearch.com*,
 502 F. Supp. 2d 719 (N.D. Ohio 2007), *aff'd*, 551 F.3d 412 (6th Cir. 2008) ............. 3

*Goddard v. Google, Inc.*,
 2008 WL 5245490 (N.D. Cal. Dec. 17, 2008) ............................................................ 2

*Goddard v. Google, Inc.*,
 640 F. Supp. 2d 1193 (N.D. Cal. 2009) ...................................................................... 3

*Green v. Am. Online*,
   318 F.3d 465 (3d Cir. 2003)..................................................................................3

*Holy Transfig. Monastery, Inc. v. Gregory*,
   689 F.3d 29 (1st Cir. 2012).................................................................................10

*Jones v. Dirty World Entm't Recordings, LLC*,
   755 F.3d 398 (6th Cir. 2014) ............................................................................1, 9

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992).............................................................................................2

*M.A. v. Village Voice Media Holdings, LLC*,
   809 F. Supp. 2d 1041 (E.D. Mo. 2011)............................................................4, 7

*Moving & Storage, Inc. v. Panayotov*,
   2014 WL 949830 (D. Mass. Mar. 12, 2014)........................................................4

*Negusie v. Holder*,
   555 U.S. 511 (2009).............................................................................................6

*Nieman v. Versuslaw, Inc.*,
   2012 WL 3201931 (C.D. Ill. Aug. 3, 2012).........................................................5

*Reno v. Am. Civil Liberties Union*,
   521 U.S. 844 (1997).............................................................................................9

*Russello v. United States*,
   464 U.S. 16 (1983)...............................................................................................6

*Small Justice LLC v. Xcentric Ventures LLC*,
   2014 WL 1214828 (D. Mass. Mar. 24, 2014)......................................................4

*Smith v. California*,
   361 U.S. 147 (1960).........................................................................................8, 9

*Stein v. World-Wide Plumbing Supply Inc.*,
   2014 WL 6783739 (E.D.N.Y. Dec. 2, 2014).......................................................7

*United States v. Afyare*,
   2013 WL 2643408 (M.D. Tenn. June 12, 2013)...............................................6, 7

*United States v. Polanco*,
   634 F.3d 39 (1st Cir. 2011)..................................................................................7

*United States v. X-Citement Video, Inc.*,
   513 U.S. 64 (1994)...............................................................................................9

*Universal Commc'n Sys. Inc. v. Lycos, Inc.*,
    478 F.3d 413 (1st Cir. 2007)..................................................................................1, 3

**State Cases**

*Commonwealth v. Zanetti*,
    454 Mass. 449, 910 N.E.2d 869 (2009) ......................................................................7

*La. Mun. Police Emps. Ret. Sys. v Hershey Co.*,
    2013 WL 6120439 (Del Ch. Nov. 8, 2013) ................................................................6

*Tropeano v. Atlantic Monthly Co.*,
    400 N.E.2d 847 (Mass. 1980) ...................................................................................10

**Statutes**

17 U.S.C. § 512(c)(1)........................................................................................................10

18 U.S.C. § 1591.................................................................................................................6

18 U.S.C. § 1595........................................................................................................4, 5, 7

18 U.S.C. § 2225..........................................................................................................4, 7

M.G.L. c. 265 ..........................................................................................................5, 6, 7

M.G.L. c. 93A ....................................................................................................................5

R.I. St. § 9-1-28..................................................................................................................9

R.I. St. § 9-1-28.1...............................................................................................................9

**Other Authorities**

*Domestic Minor Sex Trafficking: Hearing before Senate Subcomm. on Crime,
    Terrorism, and Homeland Security of the H. Comm. on the Judiciary*, 111th
    Cong. 215-16 (2010) ..................................................................................................7

## I.     INTRODUCTION

Throughout their Opposition ("Opp."), Plaintiffs try to avoid Section 230 and its crucial protections for Internet free speech. They say little about the statute or its purposes, while admitting the two key facts that establish Section 230 immunity, *i.e.*, third parties created and developed the ads about Plaintiffs, and Backpage.com is not an "information content provider."

Plaintiffs' theme now is that they are not suing about the ads concerning them, but instead about Backpage.com's "business decisions and conduct" generally. If this is the case, the Court should dismiss the claims because Plaintiffs have no standing, and they cannot merely attack the "construct and operation" of a website they do not like. *Universal Commc'n Sys. Inc. v. Lycos, Inc.*, 478 F.3d 413, 420-21 (1st Cir. 2007). Allowing Plaintiffs to assert such generic claims about Backpage.com's features, editorial decisions and review processes would be an egregious example of a "heckler's veto," which Section 230 and the First Amendment forbid.

## II.     ARGUMENT

### A.     Plaintiffs' Claims Can Only Be Based on the Ads About Them and Thus Seek to Treat Backpage.com as the "Publisher or Speaker" of User Content.

First, it is notable what Plaintiffs concede and do not contest. As Backpage.com explained ("Memo"): (1) Section 230 aims to promote free speech and encourage self-policing, Memo at 9-10; (2) application of the law turns on who created or developed the specific content from which the claims arise, *id.* at 13-15; (3) plaintiffs cannot avoid the law by attacking a website as a whole or challenging its "construct and operation," *id.*; (4) they also cannot defeat immunity by alleging a site "encourages" or "promotes" unlawful or criminal content or had notice of such content, *id.* at 15-20. Plaintiffs do not dispute any of this. More important, they concede they do not claim "that Backpage.com is an information content provider," Opp. at 15 n.5, yet that is the ***only*** basis for suit against a website for harms from third-party content. *Jones*

1

*v. Dirty World Entm't Recordings, LLC*, 755 F.3d 398, 408-09 (6th Cir. 2014).

Rather than address the uniform Section 230 case law, Plaintiffs argue their claims "do not treat Defendants as a publisher," are "wholly independent of the publication of the ad[s]," and would survive "even if the ad[s] had never been posted." Opp. at 15-17. To support this generic attack, they point to common website features on Backpage.com, *see* Opp. at 9, yet do not allege *any* of these features had *anything* to do with what happened to them. This violates the "irreducible constitutional minimum" for standing: injury-in-fact, causation, and redressability. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). Under Plaintiffs' theory, someone who never used a website, was never the subject of any material on the site, and never suffered injury could still sue. Plaintiffs cannot act as self-appointed censors of the Internet.

Regardless, this motion turns on the allegations of the Complaint, not Plaintiffs' characterizations. In the Complaint, Plaintiffs made numerous allegations that their claims are based on the ads about them. *See, e.g.*, SAC ¶¶ 74, 75, 78, 80, 82, 83, 87, 93-95, 100-102. The harm Plaintiffs allege is the abuse committed by the pimps and others, which they claim resulted from the ads. *Id.* ¶¶ 112, 113, 119, 126. Otherwise, the Complaint attacks Backpage.com's actions as a publisher, assailing features of the website, restrictions on content, and review and screening processes. *See id.* ¶¶ 35, 38-39, 41-42, 47-60, 54-58.

Plaintiffs are not the first to try to evade Section 230 by arguing their claims challenge a website's conduct rather than publication of user content. But "courts repeatedly have rejected attempts to recharacterize claims fundamentally based on the posting of online information in order to avoid § 230's prohibition on 'treat[ing] [the defendant] as a 'publisher' of information.'" *Goddard v. Google, Inc.*, 2008 WL 5245490, at *4 (N.D. Cal. Dec. 17, 2008). Thus, for example, *Doe v. MySpace, Inc.*, 528 F.3d 413 (5th Cir. 2008), rejected a minor's claim about

abuse she suffered after meeting a man on the MySpace website. Although the plaintiff argued her claims did not treat Myspace as a publisher but instead concerned the site's conduct, the Fifth Circuit found "this artful pleading to be disingenuous" because the claims fundamentally were "directed toward MySpace in its publishing, editorial, and/or screening capacities." *Id.* at 419-20. As many other cases hold, in applying Section 230, courts must focus on the fundamental nature of plaintiffs' claims—and when the claims stem from third-party content, they are barred.[1]

Moreover, Plaintiffs' attacks about Backpage.com's conduct concern its actions ***as a publisher*** in deciding what user content to disseminate, what to restrict, and how to screen and monitor. All these activities are within the heart of Section 230. No matter how artful their pleading, Plaintiffs challenge the "construct and operation" of Backpage.com, which is as immune under Section 230 as the publication of any particular post. *Lycos*, 478 F.3d at 419.

For this reason, *Doe No. 14 v. Internet Brands, Inc.*, 767 F.3d 894 (9th Cir. 2014), is inapposite. *See* Opp. at 16. There, a woman who posted a profile on a modeling website sued the site operator when she was sexually assaulted by two men who contacted her through the site. She asserted a claim under a California statute imposing a duty to warn on a person with a "special relationship" to another. *Id.* at 896. Expressing skepticism whether the law applied (an issue not before the court), *id.*, the Ninth Circuit held Section 230 did not bar the claim because it did not arise from content posted on the website or the site's "efforts, or lack thereof, to edit or remove user generated content," *id.* at 898. In sum, the claim in *Internet Brands* was not based on

---

[1] *See, e.g., Green v. Am. Online*, 318 F.3d 465, 471 (3d Cir. 2003) ("fundamental tort claim is that AOL was negligent in promulgating harmful content"); *Goddard v. Google, Inc.*, 640 F. Supp. 2d 1193, 1201 (N.D. Cal. 2009) (claims fundamentally rested on Google's "general content policy"); *Beckman v. Match.com*, 2013 WL 2355512, at *6 (D. Nev. May 29, 2013) ("Plaintiff's claims … are actually challenging the publication of the profile of a third-party user …, which is clearly immune"); *Doe v. SexSearch.com*, 502 F. Supp. 2d 719, 727 (N.D. Ohio 2007) ("At the end of the day … Plaintiff is seeking to hold SexSearch liable for its publication of third-party content and harms flowing from [its] dissemination."), *aff'd*, 551 F.3d 412 (6th Cir. 2008).

3

third-party content and did not concern the website's publisher functions, while Plaintiffs' claims fundamentally are based on exactly this.[2]

At bottom, Plaintiffs' claims are premised on the ads about them that appeared on Backpage.com. This is third-party content, for which Backpage.com is immune.[3]

### B. The Limited Exceptions for Section 230 Immunity Do Not Apply.

Plaintiffs try to shoehorn their case into two provisions of Section 230 exempting certain claims, arguing they seek to "enforce" a federal criminal statute, and their claims are "not inconsistent" with Section 230. Opp. at 20-25. Again, Plaintiffs misread the law.

Plaintiffs argue their civil claims based on federal criminal law, are "enforcement of [a] Federal criminal statute," exempt under subsection 230(e)(1). Opp. at 20-23. Yet, **six courts** have rejected this argument, holding that Section 230 exempts only federal criminal ***prosecutions***. *See* Memo. at 20-23. Plaintiffs provide no contrary authority (there is none), and suggest only that three of the cases "are thinly and poorly reasoned." Opp. at 22. As another court stated in addressing 18 U.S.C. § 1595: "Of course, Plaintiffs are not prosecutors, they are civil litigants seeking to recover money damages …." *David v. Signal Int'l, LLC*, 2012 WL 10759668, at *20 (E.D. La. Jan. 4, 2012). Criminal laws impose punishment, while civil laws such as section 1595 allow recompense in damages. *See M.A. v. Village Voice Media Holdings, LLC*, 809 F. Supp. 2d 1041, 1055 (E.D. Mo. 2011) (civil claims under 18 U.S.C. §§ 1595 and 2225 sought redress rather

---

[2] Plaintiffs cite two cases denying dismissal of Chapter 93A claims, Opp. at 17 n.6, but in both the plaintiffs (unlike here) sought to hold websites liable for content the sites themselves created and published. *See Small Justice LLC v. Xcentric Ventures LLC*, 2014 WL 1214828, at *9 (D. Mass. Mar. 24, 2014) (site could be liable for its deceptive ads); *Moving & Storage, Inc. v. Panayotov*, 2014 WL 949830, at *2 (D. Mass. Mar. 12, 2014) ("plaintiffs … bring causes of action based not on [the defendants'] publishing conduct but on [their] representations").

[3] Plaintiffs argue Section 230 requires Backpage.com to show "good faith" for its monitoring and screening, Opp. at 19, yet courts have flatly rejected this argument. *See* Memo at 13 n.10.

4

than punishment and thus were not exempt).[4] Plaintiffs cannot "enforce" federal criminal laws (*i.e.,* with imprisonment or criminal fines) and thus cannot invoke subsection 230(e)(1).[5]

Plaintiffs also argue their state-law claims survive because they are "not inconsistent" with Section 230. Opp. at 23-25. But subsection 230(e)(3) permits application of laws that, like Section 230, bar claims based on third-party content. To the extent Plaintiffs argue Section 230 does not apply because they are not suing Backpage.com as a publisher, that is not true (as discussed), and in any event, this circular logic would render subsection 230(e)(3) meaningless.[6]

### C. Plaintiffs' "Business Practices Claims" Are Deficient.

Even if Plaintiffs could evade Section 230, their so-called "Business Practices Claims" (under 18 U.S.C. § 1595, M.G.L. c. 265, § 52(d), and M.G.L c. 93A) are wholly deficient, and the theory they now advance underscores fatal constitutional problems of their case.[7]

Civil claims under 18 U.S.C. § 1595 or M.G.L. c. 265, § 51(d) require proving all the elements of a **predicate crime**. *See Doe v. Liberatore*, 478 F. Supp. 2d 742, 755 (M.D. Pa. 2007) (18 U.S.C. § 2255 requires showing defendant committed underlying crime). Thus, Plaintiffs

---

[4] Plaintiffs mischaracterize dicta in *Nieman v. Versuslaw, Inc.*, 2012 WL 3201931, at *9 (C.D. Ill. Aug. 3, 2012). Opp. at 21. That court did ***not*** hold a civil claim based on a federal criminal law is exempt from Section 230, only that "it is unclear whether § 230 would bar" such a claim.

[5] Plaintiffs' civil claim under M.G.L. c. 265, § 51(d), based on an alleged violation of the state anti-trafficking act, is plainly barred under Section 230, which preempts claims under ***any*** state laws, civil or criminal. Memo at 22-23. Indeed, Massachusetts' Attorney General admitted as much in a letter urging Congress to amend Section 230 to exempt state criminal laws. *See* https://s3.amazonaws.com/s3.documentcloud.org/documents/739520/ags-anti-230-letter.pdf.

[6] Citing *Atlantic Recording Corp. v. Project Playlist, Inc.*, 603 F. Supp. 2d 690 (S.D.N.Y. 2009), Plaintiffs argue a defendant must show a plaintiff's claim is inconsistent with Section 230. Opp. at 24. Not so. That case held only that Section 230 did not bar claims that a website facilitated copying of recordings under the exception for "intellectual property claims." *Id.* at 704.

[7] Plaintiffs argue Backpage.com "waived" challenges to the sufficiency of their anti-trafficking claims by not offering "analysis of the factual allegations in relation to the elements of the trafficking statutes." *See* Opp. at 2, 6. Given the focus of the dismissal motion—that Backpage.com is immune from suit—it had no obligation to explain the other deficiencies in Plaintiffs' claims (but did so, Memo at 17-19, as Plaintiffs recognize, Opp. at 7).

must show Backpage.com (1) "knowingly benefit[ed] financially" (2) "from participation in a venture" that (3) "engaged in an act" of sex trafficking while (4) knowing or recklessly disregarding that the trafficker would use force, fraud or coercion or that the victim was underage.  18 U.S.C. § 1591(a)(2).  Plaintiffs allege no facts to support *any* of these elements.  Their allegations about Backpage.com's "business decisions and conduct" are insufficient because criminal law requires knowing participation to accomplish "*a certain crime.*"  *Doe*, 478 F. Supp. 2d at 756 (quoting *United States v. Salmon*, 944 F.2d 1106, 1113 (3d Cir. 1991) (emphasis in original)).  These allegations (wrong as they are) do not identify a specific sex trafficking incident, much less allege Backpage.com participated in a venture to accomplish it.

At base, Plaintiffs misunderstand the anti-trafficking laws' requirements for *mens rea* and knowing "participation in a venture," 18 U.S.C. § 1591(a)(2), or acting as a "joint venturer in trafficking of [a] person," M.G.L. c. 265, § 51.  Citing cases about other laws, Plaintiffs argue the word "participate" is a "term and concept of breadth" meaning merely "to take part" in something.  Opp. at 7.[8]  But courts have held that participating in a venture under 18 U.S.C. § 1591 means aiding and abetting, requiring proof the defendant "was associated with a criminal venture, participated in it as something he wished to bring about and sought [by] his actions to make it succeed."  *United States v. Afyare*, 2013 WL 2643408, at *12 (M.D. Tenn. June 12, 2013) (quoting *United States v. Longoria*, 569 F.2d 422, 425 (5th Cir. 1978)).[9]  In other words,

---

[8] Plaintiffs cite *Russello v. United States*, 464 U.S. 16, 21-22 (1983), which concerned a civil RICO provision and did not interpret the word "participate."  Plaintiffs also cite *Negusie v. Holder*, 555 U.S. 511, 544 (2009), Opp. at 7, which addressed refugee status under the Immigration and Nationality Act, but fail to mention they cite Justice Thomas's dissent.

[9] *See also La. Mun. Police Emps. Ret. Sys. v. Hershey Co.*, 2013 WL 6120439, at *7, 9 (Del Ch. Nov. 8, 2013) (allegations about Hershey's knowledge of illegal trafficking in African cocoa farming provided no plausible basis to claim Hershey participated in a venture to exploit child labor); *Doe*, 478 F. Supp. 2d at 756-57 (dismissing claims against church diocese for priest's sexual abuse of minor where no showing the diocese shared criminal intent or sought to bring

6

the defendant must share "in the criminal intent of the principal" and "commit[] an overt act designed to aid in the success of the venture." *Id.* (quoting *Longoria*, 569 F.2d at 425).[10]

      Thus, the U.S. Department of Justice and courts agree that websites ***cannot be criminally liable*** for publishing third-party content, unless the site knew of, participated in, and sought to bring about a specific crime.  DOJ's National Coordinator for Child Exploitation Prevention and Interdiction testified to Congress that an "Internet provider[] like craigslist" is not "criminally liable for [third-party] postings unless" it "was a participant … conspiring with those who were misusing the site," because "the standard for prosecution would be knowing or willful [conduct]." *Domestic Minor Sex Trafficking:  Hearing before Senate Subcomm. on Crime, Terrorism, and Homeland Security of the H. Comm. on the Judiciary*, 111th Cong. 215-16 (2010).  She also explained: "We have [the proper tools] to prosecute the guilty, that is, the people who are using the Internet" and cautioned against a different rule because no one "would propose closing the Internet." *Id.* at 216.  Courts, too, uniformly have rejected claims based on allegations that websites assist, promote, or aid and abet users' criminal conduct.[11]

---

about the priest's crimes); *Stein v. World-Wide Plumbing Supply Inc.*, 2014 WL 6783739, at *5 (E.D.N.Y. Dec. 2, 2014) (dismissing section 1595 claim where complaint provided no fact allegations defendants knew of peonage scheme); *United States v. Polanco*, 634 F.3d 39, 44 (1st Cir. 2011) (noting "Judge Learned Hand's 'classic' definition that an aider and abettor is one who associate[s] himself with the venture, … participate[s] in it as in something that he wishes to bring about,' and 'seek[s] by his action to make it succeed." (internal quotation marks omitted)).

[10] M.G.L. c. 265, § 51(d), also refers to aiding and abetting requirements—it permits liability against a business entity only if it "knowingly aids or is a joint venturer in trafficking." *See Commonwealth v. Zanetti*, 454 Mass. 449, 467, 910 N.E.2d 869 (2009) ("[J]oint venture criminal liability has two essential elements:  that the defendant knowingly participated in the commission of the crime charged, and that the defendant had or shared the required criminal intent.").

[11] *See, e.g.*, *Doe v. GTE Corp.*, 347 F.3d 655, 659 (7th Cir. 2003) (website did "not satisfy the ordinary understanding of culpable assistance to a wrongdoer, which requires a desire to promote the wrongful venture's success"); *Dart v. Craigslist, Inc.*, 665 F. Supp. 2d 961, 967-69 (N.D. Ill. 2009) (Craigslist not culpable for "aiding and abetting" users as it did not "cause" them to do anything except "in the sense that no one could post [unlawful content] if craigslist did not offer a forum"); *M.A.*, 809 F. Supp. 2d at 1054 (rejecting claims against Backpage.com under 18

7

Nothing in the Complaint or Opposition remotely suggests Backpage.com participated in any venture with pimps to traffic Plaintiffs, shared any criminal intent, knew the ads when posted were for sex trafficking or the persons depicted were underage or coerced, or took any overt act to accomplish the pimps' unlawful aims. Plaintiffs have provided no plausible allegations to support *any* element of the anti-trafficking laws on which they base their civil claims (and they cannot).[12]

Moreover, as Plaintiffs seek to couch their claims, they contravene the First Amendment. Plaintiffs say Backpage.com is "not meaningfully different from a hotel" that rents rooms used for sex trafficking. Opp. at 10. Plaintiffs ignore that Backpage.com's business is to ***disseminate speech***. The First Amendment protects both the website and its users, as three courts have held in striking down states' attempts to criminalize Backpage.com's publication of escort ads. *Backpage.com, LLC v. McKenna*, 881 F. Supp. 2d 1262, 1275-85 (W.D. Wash. 2012); *Backpage.com, LLC v. Cooper*, 939 F. Supp. 2d 805, 828-41 (M.D. Tenn. 2013); *Backpage.com, LLC v. Hoffman*, 2013 WL 4502097, at *7-11 (D.N.J. Aug. 20, 2013). Thus, Plaintiffs cannot assert claims against Backpage.com absent proof it ***knew*** in advance the posts concerning Plaintiffs were unlawful because any other rule would severely chill speech. *See Smith v. California*, 361 U.S. 147, 153 (1960) (ordinance "dispensing with any requirement of knowledge of the contents of the book on the part of the seller" unconstitutional because it "impose[d] a severe limitation on the public's access to constitutionally protected matter"). Indeed, given that Plaintiffs claim Backpage.com participated in ***underage*** sex trafficking, they would also have to

---

U.S.C. §§ 1595 and 2255 because plaintiff's general allegations about website "do not describe the specific intent required" for criminal liability).

[12] Plaintiffs' response about their Chapter 93A claim merits only brief mention. Plaintiffs admit they did not rely on any alleged misrepresentations. Opp. at 5. Instead, they contend that if Backpage.com had not cooperated with law enforcement and reported to NCMEC, there is a "reasonable possibility" the site would have been shuttered and they would not have been abused by pimps who recruited and victimized them, *id.* at 3, 12. Again, a theory of causation so attenuated and speculative does not plausibly allege a claim. *See* Memo at 23-25.

8

show it had advance knowledge the Plaintiffs were under eighteen. *United States v. X-Citement Video, Inc.*, 513 U.S. 64, 78 (1994) (interpreting statute concerning distribution of sexually explicit materials depicting minors to require knowledge of the minor's age, because "a statute completely bereft of a scienter requirement as to the age of the performers would raise serious constitutional doubts"); *see also McKenna*, 881 F. Supp. 2d at 1277-78, and *Cooper*, 939 F. Supp. 2d at 829-30 (applying *Smith* and *X-Citement Video* to posts on Backpage.com).

Moreover, Plaintiffs' reading of the anti-trafficking laws (*i.e.*, they apply to "all forms of knowing or reckless conduct that, in any fashion, help sex trafficking ventures to succeed," Opp. at 7-8), is so overbroad it raises additional First Amendment problems because it would impose criminal liability on ISPs, search engines, and any other online providers if they provide services that could be connected in some way to sex trafficking. *See McKenna*, 881 F. Supp. 2d at 1280-83; *Cooper*, 939 F. Supp. 2d at 830-33. Plaintiffs' claim they may sue a website because they do not like its "business decisions and conduct"— divorced from anything that happened to them— is an egregious form of the "heckler's veto," which the First Amendment and Section 230 forbid. *Reno v. Am. Civil Liberties Union*, 521 U.S. 844, 880 (1997); *Jones*, 755 F.3d at 407.

**D.    Plaintiffs' Supposed Intellectual Property Claims Are Deficient.**

Plaintiffs' right of publicity claims fail because they have not alleged Backpage.com used photos of them for ***its*** commercial benefit (while admitting they must, Opp. at 26).[13] Plaintiffs note Backpage.com reviews ads before publication and point to their conclusory assertion that photos are "an integral part of [its] business model," *id.* at 26, but this does not come close to a showing the site appropriated and used Plaintiffs' photos for ***its own*** benefit (*e.g.*, to promote the

---

[13] Regarding Doe 1, Plaintiffs say they "mistakenly" sued under R.I. St. § 9-1-28.1, and ask the Court to consider the claim under § 9-1-28 or permit amendment. Opp. at 25 n.8. This claim should be dismissed with prejudice because it is deficient under either statute. Memo at 27 n.20.

9

site). In fact, the Complaint admits it was the pimps who used photos to "enhance the effectiveness" of ads they "placed on the website." SAC ¶ 130. Plaintiffs cite no case holding a website violates publicity rights merely by allowing users to post content including photos.[14]

Doe 3 also still fails to state a copyright infringement claim. Plaintiffs do not dispute that a claim for direct infringement requires a volitional act, but argue this is satisfied if a defendant "performs supervisory acts" to ensure material is "available on a server and posted to a website." Opp. at 27-28. But the case they cite concerned an entirely different circumstance, where an *agent* posted content at the website owner's direction. *See Holy Transfig. Monastery, Inc. v. Gregory*, 689 F.3d 29, 56 (1st Cir. 2012). Doe 3 bases her vicarious liability claim on allegations Backpage.com reviews and charges for ads, Opp. at 29, but this ignores the cases finding such pre-publication review is insufficient and that a site must *directly* benefit from the infringement. Memo at 29. Finally, Doe 3 has not alleged knowledge sufficient to show contributory infringement. The Opposition claims defendants "were informed in writing that the image of Jane Doe No. 3 depicted a minor and was posted without authorization," Opp. at 30, but in fact, the Complaint does not allege Plaintiffs told Backpage.com it published *any* photo "without authorization," much less provide any notice of infringement. *See* SAC ¶¶ 105-07, 102. The Court should dismiss Plaintiffs' copyright claim, a patent attempt to evade Section 230.[15]

---

[14] *Tropeano v. Atlantic Monthly Co.*, 400 N.E.2d 847, 850 (1980), held that the fact a defendant is in the business of publishing for profit does not make publication of photos a commercial misappropriation. Memo at 26. Plaintiffs miss the point by arguing Backpage.com did not publish Plaintiffs' photos for "a newsworthy purpose," Opp. at 26, citing *Peckham v. New Eng. Newspapers, Inc.*, 865 F. Supp. 2d 127, 129-30 (D. Mass. 2012), which concerned a newspaper printing a photo on merchandise, and the only defense raised was that this use was "newsworthy."

[15] Plaintiffs argue Backpage.com is not entitled to the DMCA safe harbor, 17 U.S.C. § 512(c)(1), because it failed to remove the photo upon notification and did not store the photo "at the direction of a user." Opp. at 28-29. But Plaintiffs do not allege they notified Backpage.com of *infringement*, and simply reviewing content before it is posted does not mean it was not stored "at the direction of a user." *See* 17 U.S.C. 512(c)(3)(A) (requirements for "effective" notice).

Dated:  February 23, 2015.

                                                 Respectfully submitted,

s/     *Robert A. Bertsche*
Robert A. Bertsche (BBO #554333)
Jeffrey J. Pyle (BBO #647438)
PRINCE LOBEL TYE LLP
100 Cambridge Street, Suite 2200
Boston, MA 02114
(617) 456-8000 (tel.); (617) 456-8100 (fax)
rbertsche@PrinceLobel.com
jpyle@PrinceLobel.com

James C. Grant (admitted *pro hac vice*)
Ambika K. Doran (admitted *pro hac vice*)
DAVIS WRIGHT TREMAINE LLP
1201 Third Avenue, Suite 2200
Seattle, WA 98101
(206) 622-3150 (tel.); (206) 757-7700 (fax)
jimgrant@dwt.com
ambikadoran@dwt.com

## CERTIFICATE OF SERVICE

     I hereby certify that on February 23, 2015, the within document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and by first-class mail to any non-registered participants.

/s/     *Robert A. Bertsche*
Robert A. Bertsche