# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| JANE DOE NO. 1, a minor child, by her parent and next friend MARY ROE, JANE DOE NO. 2, and JANE DOE NO. 3, a minor child, by her parents and next friends SAM LOE and SARA LOE,<br><br>          Plaintiffs,<br>    v.<br><br>BACKPAGE.COM, LLC, CAMARILLO HOLDINGS, LLC (f/k/a VILLAGE VOICE MEDIA HOLDINGS, LLC), and NEW TIMES MEDIA, LLC,<br><br>          Defendants. | Civil Action No. 14-13870-RGS |

## PLAINTIFFS' SUR-REPLY IN SUPPORT OF OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

> JANE DOE NO. 1, JANE DOE NO. 2, and JANE DOE NO. 3,
>
> By their attorneys,
>
> John T. Montgomery (No. 352220)
> Aaron M. Katz (No. 662457)
> Dara A. Reppucci (No. 679511)
> Jessica L. Soto (No. 683145)
> Christine E. Singer (No. 681525)
> Cassandra Bolanos (No. 686297)
> ROPES & GRAY LLP
> 800 Boylston Street
> Boston, MA 02199
> Telephone: (617) 951-7000
> Email: john.montgomery@ropesgray.com
>        aaron.katz@ropesgray.com
>        dara.reppucci@ropesgray.com
>        jessica.soto@ropesgray.com
>        christine.singer@ropesgray.com
>        cassandra.bolanos@ropesgray.com

**TABLE OF CONTENTS**

**Pages**

I. Defendants' Motion Misconstrues the Applicable Federal and State Statutes. ....................... 1

    A. Plaintiffs State Plausible Claims that Defendants Have Illegally "Participated" in and "Aided" the Sex Trafficking Ventures. ............................... 1

    B. Plaintiffs State Plausible Claims Under Chapter 93A. .......................................... 6

    C. Plaintiffs State a Plausible Claim Under the Right of Publicity Statutes. .............. 6

    D. Plaintiffs State a Plausible Claim for Copyright Infringement. ............................. 7

II. Defendants Cannot Hide Behind Section 230 or the First Amendment. ............................... 8

CONCLUSION. ………………………………………………………………………………10

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*A&M Records, Inc. v. Napster, Inc.*,
  239 F.3d 1004 (9th Cir. 2001) ..................................................................................8

*Barnes v. Yahoo!, Inc.*,
  570 F.3d 1096 (9th Cir. 2009) ................................................................................8, 9

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ..................................................................................................6

*Columbia Pictures Industries v. Fung*,
  710 F.3d 1020 (9th Cir. 2013) ..................................................................................7

*Commonwealth v. Young*,
  453 Mass. 707 (2009) ...............................................................................................4

*Conn. Nat'l Bank v. Germain*,
  503 U.S. 249 (1992) ..................................................................................................3

*CoStar Grp., Inc. v. LoopNet, Inc.*,
  373 F.3d 544 (4th Cir. 2004) ....................................................................................7

*Dart v. Craigslist*,
  665 F. Supp. 2d 961 (N.D. Ill. 2009) ........................................................................5

*Doe v. GTE Corp.*,
  347 F.3d 655 (7th Cir. 2003) ....................................................................................5

*Doe v. Liberatore*,
  478 F. Supp. 2d 742 (M.D. Pa. 2007) ...................................................................4, 5

*Hershenow v. Enterprise Rent-A-Car Co. of Boston, Inc.*,
  445 Mass. 790 (2006) ...............................................................................................6

*Jean-Charles v. Perlitz,*
  937 F. Supp. 2d 276 (D. Conn. 2013) .......................................................................2

*Louisiana Mun. Police Emps. Ret. Sys. v. Hershey Co.*,
  2013 WL 6120439 (Del. Ch. Nov. 8, 2013) .............................................................5

*Medina-Velázquez v. Hernández-Gregorat*,
  767 F.3d 103 (1st Cir. 2014) .....................................................................................1

*Slaney v. Westwood Auto, Inc.,*
  366 Mass. 688 (1975) ...............................................................................................6

*Soc'y of Holy Transfig. Monastery, Inc. v. Gregory*,
   689 F.3d 29 (1st Cir. 2012) ..................................................................................... 7

*Stein v. World-Wide Plumbing Supply Inc.*,
   2014 WL 6783739 (E.D.N.Y. Dec. 2, 2014) ............................................................ 5

*Tropeano v. Atlantic Monthly Co.*,
   379 Mass. 745 (1980) .............................................................................................. 7

*United States v. Afyare*,
   2013 WL 2643408 (M.D. Tenn. June 12, 2013) ...................................................... 5

*United States v. Polanco*,
   634 F.3d 39 (1st Cir. 2011) ..................................................................................... 5

*Universal Comm. Sys. v. Lycos, Inc.*,
   478 F.3d 413 (1st Cir. 2007) ................................................................................... 8

**STATUTES**

18 U.S.C. § 2 ................................................................................................................ 3, 4

18 U.S.C. § 371 ................................................................................................................. 3

18 U.S.C. § 1591(a)(1) .................................................................................................. 5, 3

18 U.S.C. § 1591(a)(2) .................................................................................................. 2, 3

18 U.S.C. § 1594(b)-(c) ..................................................................................................... 3

18 U.S.C. § 1595 ....................................................................................................... 2, 5, 10

18 U.S.C. § 2255 ................................................................................................................ 4

42 U.S.C. § 247d-6d(c)(5)(B)(i) ...................................................................................... 10

M.G.L. ch. 93A ....................................................................................................... 6, 8, 10

M.G.L. ch. 265, § 50(d) .................................................................................................... 4

**OTHER AUTHORITIES**

*Domestic Minor Sex Trafficking: Hearing before Senate Subcomm. on Crime, Terrorism,
   and Homeland Security of the H. Comm. on the Judiciary*, 111th Cong. 215-16 (2010) .......... 4

Defendants' Reply disregards the procedural posture of this case. Although Defendants profess their innocence of any wrongdoing, this case is still at the pleading stage, and Plaintiffs are not required to "'set forth a detailed evidentiary proffer,'" let alone prove that Defendants violated the law. *Medina-Velázquez v. Hernández-Gregorat*, 767 F.3d 103, 108 (1st Cir. 2014) (quoting *Rodríguez-Reyes v. Molina-Rodríguez,* 711 F.3d 49, 54 (1st Cir. 2013)). Rather, Plaintiffs' factual allegations must be assumed true and, considered cumulatively, need merely to "allow[ ] a reasonable inference that [Defendants are] liable for the misconduct alleged" and not entitled to immunity under the Communications Decency Act ("CDA"). *Id*. at 108-09 (citation and internal quotation marks omitted). Plaintiffs have satisfied their burden with detailed allegations, which Defendants again decline to address, describing the operation of an online marketplace that knowingly causes egregious harm to numerous children, including Plaintiffs. Defendants' argument that Plaintiffs have failed to state cognizable claims misconstrues the statutes on which Plaintiffs' claims are based, section 230 of the CDA, and the relevant case law. Plaintiffs have stated actionable violations of federal and state law, and section 230 of the CDA does not afford Defendants "immunity" because, *inter alia*, Plaintiffs' claims neither impute to Defendants website content fully created by another nor seek to hold Defendants liable for exercising traditional publisher functions. Moreover, Defendants' attempt to wrap themselves in the First Amendment is absurd: the First Amendment does not protect non-speech business conduct intended to aid illegal sex trafficking or false and misleading speech made to law enforcement officials.

## I. Defendants' Motion Misconstrues the Applicable Federal and State Statutes.

### A. Plaintiffs State Plausible Claims that Defendants Have Illegally "Participated" in and "Aided" the Sex Trafficking Ventures.

Defendants try to paint Backpage.com as simply a passive, run-of-the-mill community posting board on which some bad apples unfortunately sometimes place illegal child sex

1

advertisements. Backpage.com, however, did not become the dominant player in the online illicit sex trade by chance. Plaintiffs' Complaint is replete with factual allegations showing that Defendants specifically, purposefully, and successfully designed the website to help buyers and sellers of child sex efficiently consummate their unlawful transactions while also avoiding law enforcement detection. Defendants have intentionally adopted a series of atypical, troubling business practices with the goal of ensuring that the buyers and sellers of illicit sex, including child sex, view Backpage.com's "adult services" and "escorts" categories as safe havens. These business practices include: (i) manipulating the metadata embedded within the photographs that sex traffickers upload to Backpage.com; (ii) steering sex traffickers away from advertising language likely to raise red flags with law enforcement; (iii) accepting, and even financially incenting, sex traffickers' use of anonymous and traceless payment methods, such as pre-paid credit cards and the pseudo-currency Bitcoin; (iv) interfering with law enforcement's efforts to deter illegal child sex transactions for which Backpage.com is the intermediary; and (v) misleading law enforcement about Backpage.com's efforts to identify and report sex trafficking ventures that utilize Backpage.com. *See, e.g.*, SAC ¶¶ 38-39, 41-42, 46-47, 51, 54, 57-58. Defendants may vehemently disagree with these factual allegations and the plausible inferences that Plaintiffs draw from them, but the pleadings stage is not the time to resolve factual disputes.

The applicable federal anti-trafficking statute, the TVPRA, criminalizes knowingly benefitting from "participation" in a child sex trafficking venture, 18 U.S.C. § 1591(a)(2), while 18 U.S.C. § 1595 provides the remedy for such conduct. As demonstrated by *Jean-Charles v. Perlitz,* 937 F. Supp. 2d 276 (D. Conn. 2013), where the district court held that the plaintiff stated a plausible TVPRA claim against a university based on allegations that a university employee failed to diligently react to evidence that sexual abuse was occurring at a Haitian boarding school that the university was responsible for overseeing, section 1591(a)(2)'s

2

"participation" provision reaches more than individuals and business entities that conspire to commit or aid and abet child sex trafficking crimes. Rather, in choosing to use the broad term "participation" in 18 U.S.C. § 1591(a)(2), Congress also intended to prohibit an entity—website operators not excepted—from purposefully engaging in conduct and adopting practices that, in order to maximize the entity's profitability, are intentionally designed to attract the buyers and sellers of child sex by helping those buyers and sellers efficiently and safely consummate their illegal transactions. Defendants might not like the TVPRA's breadth, but courts "must presume that a legislature says in a statute what it means and means in a statute what it says there." *Conn. Nat.'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992).

This Court can safely reject Defendants' argument that § 1591(a)(2), and by implication that parallel enforcement provision § 1595, encompasses only a sex trafficking venture's conspirators and aiders and abettors. At the time that the TVPRA was enacted, 18 U.S.C. § 2(a) (aiding and abetting) and 18 U.S.C. § 371 (general conspiracy) already were available to prosecutors to punish individuals who aid and abet or conspire to commit violations of § 1591(a)(1). Moreover, Congress also separately included additional conspiracy provisions in the TVPRA itself, *see* 18 U.S.C. § 1594(b)-(c), presumably to avoid the general conspiracy statute's five-year statutory maximum prison sentence. Had Congress actually intended § 1591(a)(2)'s "participation" provision to apply as narrowly as Defendants suggest, Congress could simply have *omitted* § 1591(a)(2) from the TVPRA. Defendants' proposed statutory construction therefore renders § 1591(a)(2)'s "participation" provision entirely superfluous, in violation of black letter principles of statutory construction. Defendants cannot salvage their flawed statutory construction by pointing to—and, indeed, blatantly misquoting—an off-the-cuff statement that a former DOJ lawyer made during a congressional subcommittee hearing nearly five years ago.[1]

---

[1] At page 7 of their Reply, Defendants assert that former DOJ lawyer Francey Hakes told Congress that an ISP "like craigslist" is subject to TVPRA liability only if it *conspires* with the pimps through the ISP's website. Setting aside

Defendants' interpretation of the Massachusetts anti-trafficking statute, the MATA, also fails to respect black letter canons of construction. On its plain language, the MATA does not criminalize merely conduct that "aids and abets" sex traffickers, but any conduct that "knowingly *aids*" a sex trafficking venture. M.G.L. ch. 265, § 50(d) (emphasis added). It strains credulity to suggest that the Massachusetts legislature intended "aids" to be synonymous with the well-established term of art "aids and abets." Instead, the Court must presume that the legislature used the term "aids," rather than "aids and abets," for a reason—namely, to ensure that the MATA criminalizes all forms of conduct that purposefully helps sex trafficking ventures to succeed. *See Comm. v. Young*, 453 Mass. 707, 713 (2009).

In support of its misguided attempt to constrain the reach of the TVPRA and the MATA, Defendants heavily rely on the district court's summary judgment decision in *Doe v. Liberatore*, 478 F. Supp. 2d 742 (M.D. Pa. 2007). The plaintiff in *Liberatore* sought to hold a diocese, a church, and several church members (the "Diocesan Defendants") civilly liable for sexual abuse committed by co-defendant Reverend Liberatore. The plaintiff brought his lawsuit not under the TVPRA's private right of action provision, which Congress enacted more than a year *after* Liberatore's abuse ceased, but rather under 18 U.S.C. § 2255, which entitles a molestation victim to bring a civil enforcement action against any person whose sexual misconduct violated the Protection of Children Against Sexual Exploitation Act of 1977 ("PCASE"). The plaintiff argued that, although the Diocesan Defendants concededly did not commit the sexual abuse, they were still subject to civil liability under § 2255 because they had "aided and abetted" Reverend Liberatore's criminal PCASE offenses and thus pursuant to 18 U.S.C. § 2 could be punished to the same degree as Liberatore himself. *See id.* at 756. On summary judgment, however, the

---

that Ms. Hake's congressional testimony does not have the force of law and is legally irrelevant, Ms. Hakes, in response to a congressman's question, stated merely that conspiring with pimps is one "example" of conduct that would expose an ISP to TVPRA liability. *Domestic Minor Sex Trafficking: Hearing before Senate Subcomm. on Crime, Terrorism, and Homeland Security of the H. Comm. on the Judiciary*, 111th Cong. 215-16 (2010).

4

court held that the plaintiff had not adduced any evidence that the Diocesan Defendants "aided and abetted" Liberatore. *Liberatore* thus offers Defendants no help here, because Plaintiffs' claim is that Defendants *directly* violated § 1591(a)(2)'s broader "participation" provision and the MATA's similar "aids" provision. The decisions in *United States v. Polanco*, 634 F.3d 39 (1st Cir. 2011), *Doe v. GTE Corp.*, 347 F.3d 655 (7th Cir. 2003), and *Dart v. Craigslist*, 665 F. Supp. 2d 961 (N.D. Ill. 2009), which likewise involved claims necessarily premised on an "aiding and abetting" theory, are irrelevant for substantially the same reason.

Defendants also heavily rely upon the district court's omnibus pre-trial ruling in *United States v. Afyare*, 2013 WL 2643408 (M.D. Tenn. June 12, 2013). In that ruling, which has never been cited by any court, the district court precluded the prosecution from offering at trial, in support of criminal sex trafficking charges brought under 18 U.S.C. § 1591(a)(2), evidence that the defendants had prior non-sexual convictions. In seeking to wrench something useful from that ruling, Defendants pluck an isolated statement made by the court during an oral argument colloquy with the prosecutor. Reply 6. Tellingly, however, Defendants ignore the *Afyare* court's subsequent statement that "to be [a] participant in [a] venture," a defendant merely has to engage in some "affirmative act" or "'overt act' to advance the sex trafficking activities"—precisely what Plaintiffs allege Defendants did here.[2]  2013 WL 2643408 at *12, *13.

Thus, there is a complete absence of support for Defendants' effort to use "conspiracy" and "aiding and abetting" principles to constrain the TVPRA's and the MATA's intentionally broad reach. Defendants also miss the mark with their related suggestions that, even if they committed the requisite *actus reus* under the TVPRA and the MATA, they did not act with the

---

[2] Defendants also cite *Louisiana Mun. Police Emps. Ret. Sys. v. Hershey Co.*, 2013 WL 6120439 (Del. Ch. Nov. 8, 2013) and *Stein v. World-Wide Plumbing Supply Inc.*, 2014 WL 6783739 (E.D.N.Y. Dec. 2, 2014). The factual allegations found legally insufficient in *Hershey* and *Stein* bear no resemblance to those that Plaintiffs make against Defendants. In *Hershey*, the court rejected a shareholder group's argument that, solely because Hershey purchased some of its cocoa beans from Ghanaian farmers who had not certified that the beans were harvested without child labor, Hershey could be deemed an unlawful participant in slavery. In *Stein*, the court dismissed "peonage" claims against certain defendants under § 1595, finding that those defendants neither financially benefitted from nor had any knowledge of the acts of peonage that others had committed.

requisite *mens rea* to violate those statutes. This case is not at summary judgment. Plaintiffs' detailed allegations support the reasonable inference that Defendants, at a minimum, knew or should have known that their conduct would expand the market for child sex trafficking, and that victims like Plaintiffs would be horribly injured as a result. It is also reasonable to expect that discovery concerning Defendants' business strategy, their operations, and their review of each of Plaintiffs' advertisements will reveal direct evidence—evidence now uniquely in the control of Defendants—that will support each element of the claims under the TVPRA and the MATA. Nothing more is required. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (the plausibility standard "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of [plaintiff's allegations].").

B. **Plaintiffs State Plausible Claims Under Chapter 93A.**

In their Reply brief, Defendants assert that Plaintiffs' lack of reliance on Defendants' intentional misrepresentations to law enforcement dooms Plaintiffs' Chapter 93A claims. Defendants are wrong. Reliance is not an element of a Chapter 93A claim, nor does a plaintiff need be the person to whom the defendant's deceptive conduct was directed. M.G.L. ch. 93A; *see, e.g.*, *Slaney v. Westwood Auto, Inc.*, 366 Mass. 688, 693–97 (1975); *Hershenow v. Enterprise Rent-A-Car Co. of Boston, Inc.*, 445 Mass. 790, 800 n.20 (2006). Plaintiffs specifically describe the unfair and deceptive practices that Defendants employed to mislead law enforcement and have adequately alleged a causal connection between those practices and Plaintiffs' injuries. SAC ¶¶ 29-37.

C. **Plaintiffs State a Plausible Claim Under the Right of Publicity Statutes.**

Defendants' assertion that Plaintiffs "have not alleged Backpage.com used photos of them for *its* commercial benefit" is wrong. Reply 9. Plaintiffs allege that photographs are "an integral part of [Defendants'] business model" and that Defendants charge $12.00 to $17.00 per ad. SAC ¶¶ 43, 130-32; Opp. 26. Defendants' use of photographs appears to be deliberate, not

6

merely "incidental," which is the "crucial distinction" under *Tropeano v. Atlantic Monthly Co.*, 379 Mass. 745, 749 (1980). In *Tropeano*, the publication of the plaintiff's photograph was "incidental" because it was a small, nonessential part of an article containing a broader "sociological commentary, and not [] a means of soliciting sales or in association with an advertisement of any kind." *Id.* at 751. In contrast, the unauthorized photographs here were allegedly used deliberately as the *centerpiece* of the advertisements. SAC ¶¶ 130-34. At the very least, viewing these allegations and the reasonable inferences therefrom in the light most favorable to Plaintiffs, the motion to dismiss the right of publicity claims must fail.

>   D.   **Plaintiffs State a Plausible Claim for Copyright Infringement.**

Defendants' argument on direct infringement is based on Fourth Circuit law concerning volitional conduct. Reply 10; Def. Br. 28.[3] But Defendants fail to address the First Circuit's analysis of *CoStar Grp., Inc. v. LoopNet, Inc.*, 373 F.3d 544 (4th Cir. 2004), which found that *CoStar* applies only to an Internet Service Provider ("ISP") that "*passively*" stores material. *Monastery*, 689 F.3d at 57 n.19; *see* Opp. 27-28. In *Monastery*, moreover, the First Circuit held that one who "engage[s] in sufficient acts of authority and control over the server and material actually posted . . . may be held liable for direct infringement." 689 F.3d at 57. Plaintiffs have alleged such conduct.

Defendants' arguments with respect to secondary liability are similarly unpersuasive. The cases that Defendants cite do not preclude a finding that they have a direct financial interest in the infringement. Indeed, *Columbia Pictures Industries v. Fung* found that a defendant's "income stream derived from advertising [was] sufficiently direct to meet" the requirement. 710 F.3d 1020, 1045 (9th Cir. 2013). The allegations here meet that standard. Opp. 29. For contributory infringement, Defendants' contention that they were not informed of any infringing

---

[3] Defendants even claim that "direct infringement requires a volitional act," Reply 10, despite the fact that, as Plaintiffs note, Opp. 27 n.10, the First Circuit has never held that a plaintiff must show a volitional act in order to establish direct infringement. *Soc'y of Holy Transfig. Monastery, Inc. v. Gregory*, 689 F.3d 29, 55 (1st Cir. 2012).

7

"photo," Reply 10, reflects a misunderstanding of the law,[4] and in any event, is baseless. The Complaint alleges that it is "well known" that unauthorized photographs are routinely used in ads offering minors for sex, SAC ¶ 141, and that Defendants were actually directed to ads incorporating the copyrighted photograph. SAC ¶¶ 102, 105-07, 138-47; Opp. 30.

## II.   **Defendants Cannot Hide Behind Section 230 or the First Amendment.**

Neither the CDA nor the First Amendment entitles Defendants to short-circuit Plaintiffs' claims at the pleadings stage. The First Circuit's decision in *Universal Comm. Sys. v. Lycos, Inc.*, 478 F.3d 413, 421-22 (1st Cir. 2007), makes clear that section 230's "immunity" provision is implicated only to the extent that a plaintiff's cause of action either (i) imputes the content to the ISP or (ii) seeks to hold the ISP liable for its decision to publish the content. Plaintiffs' claims under the TVPRA, the MATA, and Chapter 93A do not do either of these things. Rather, Plaintiffs' TVPRA and MATA claims are based on Defendants' own purposeful conduct constituting unlawful "participation" in and "aid" to sex trafficking ventures, and the Chapter 93A claims are based on Defendants' own affirmative unfair and deceptive conduct. Defendants' generic appeal to section 230 wrongly presumes that a court must apply the statute's immunity provision in a vacuum. To the contrary, as courts across the country have recognized, including the First Circuit in *Lycos*, a court must closely examine the precise elements of a cause of action to determine whether that cause of action seeks to impose liability on the basis of ISP's traditional publishing functions or otherwise treats the service provider as the actual creator of injurious content that it did not, in fact, create even in part.

The Ninth Circuit's decision in *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1100-09 (9th Cir. 2009), proves the point. Even assuming *arguendo* that Defendants do not create, even in part, the child sex advertisements littered across Backpage.com, *Barnes* confirms that section 230

---

[4] The relevant question is only whether Defendants "knew or had reason to know" of the infringement. *See A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1021 (9th Cir. 2001). Plaintiffs have alleged such knowledge. SAC ¶¶ 138-47.

does not provide Defendants with an impermeable shield to liability merely because Plaintiffs' injuries bear a causal connection to advertisements posted by traffickers. In *Barnes*, the Ninth Circuit reversed the district court's dismissal of the plaintiff's promissory estoppel claim against Yahoo. *Id.* at 1109. Indisputably, the plaintiff's injuries were causally connected to her ex-boyfriend's unauthorized posting of her private, sexually explicit photographs on a message board. *Id.* at 1099. The promissory estoppel claim, however, alleged that, in response to written requests, a Yahoo executive promised the plaintiff that Yahoo would remove the injurious postings, but that Yahoo did not fulfill that promise. *Id.* at 1103. Judge O'Scannlain, writing for a unanimous panel, explained that section 230, though a bar to the claim that Yahoo negligently failed to remove the injurious postings, *did not* bar the promissory estoppel claim. *Id.* at 1109. The court explained that Yahoo's promise was a "legally significant event" that made Yahoo subject to a legal duty to the plaintiff that is different from "performance of the action promised." *Id.* at 1107-08. In other words, the conduct underlying the promissory estoppel claim—making, and then breaking, an enforceable promise—did not involve "behavior that is identical to publishing or speaking," *id.*, rendering section 230's immunity provision inapplicable.

The compelling logic of *Barnes* confirms the common sense notion that section 230 does not encompass every situation in which third-party Internet content forms part of the backdrop of the plaintiff's claim or played some role in the "but for" chain of causation. *See id.* Just as Yahoo's liability stemmed from its own decision to breach a promise it chose to make to the plaintiff, Defendants' liability here stems from their purposeful decision to engage in conduct that federal and state trafficking statutes prohibit and that is unfair and deceptive.

In any event, Plaintiffs' claims fall within the exceptions set forth in section 230(e). Plaintiffs' TVPRA claims falls within section 230(e)(1) because those claims constitute "enforcement of a federal criminal statute." Consistent with Plaintiffs' construction, Congress in

9

other statutes has expressly stated that "[t]he term 'enforcement action'" includes civil actions. *See, e.g.* 42 U.S.C. § 247d-6d(c)(5)(B)(i). Defendants' argument that section 230(e)(1) applies only to *criminal prosecutions*, and therefore does not apply to a civil enforcement action brought under 18 U.S.C. § 1595 and premised on Defendants' underlying violation of § 1591, cannot be squared with section 230(e)(1)'s plain language or well-established canons of statutory construction.[5] Although Defendants claim that "six courts" have embraced their position, Reply 4, there are only three decisions that do so, and Plaintiffs demonstrated in their initial Opposition why none are persuasive. Opp. 22-23. In addition, the MATA and Chapter 93A claims fall within section 230(e)(3) because they are not "inconsistent" with the TVPRA. Defendants are flat wrong that any state law claim that is "based" in any way "on third party content" is inconsistent with the TVPRA. Opp. 24-25. Finally, Plaintiffs' intellectual property claims plainly fall into the section 230(e)(2) exception.

With respect to Defendants' cries of First Amendment protection, the First Amendment obviously does not afford any protection to unlawful advertisements that seek to sell children for sex, nor does the First Amendment protect the purposeful, non-speech conduct of a defendant—even a defendant who operates a website—that constitutes criminal "participation" in a sex trafficking venture. Defendants did not cite any case law to the contrary, and Plaintiffs are certainly aware of none.

## CONCLUSION

For the reasons stated, Defendants' Motion to Dismiss should be denied in its entirety.

---

[5] Under Defendants' interpretation, section 230(e)(1) would not even apply to, for example, a civil RICO action brought by the Department of Justice.

        Respectfully submitted,


        <u>/s/   John T. Montgomery</u>

        John T. Montgomery (No. 352220)
        Aaron M. Katz (No. 662457)
        Dara A. Reppucci (No. 679511)
        Jessica L. Soto (No. 683145)
        Christine E. Singer (No. 681525)
        Cassandra Bolanos (No. 686297)
        ROPES & GRAY LLP
        800 Boylston Street
        Boston, MA 02199
        Telephone:  (617) 951-7000
        Email: john.montgomery@ropesgray.com
               aaron.katz@ropesgray.com
               dara.reppucci@ropesgray.com
               jessica.soto@ropesgray.com
               christine.singer@ropesgray.com
               cassandra.bolanos@ropesgray.com

March 5, 2015

## **CERTIFICATE OF SERVICE**

     I, John T. Montgomery, hereby certify that a true and correct copy of this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as nonregistered participants on March 5, 2015.

                                                /s/   John T. Montgomery

                                                John T. Montgomery